### UNITED STATES DISTRICT COURT
### DISTRICT OF COLORADO

| | |
|---|---|
| **Joshua Wheat,** *on behalf of himself and all others similarly situated*, <br><br> **Plaintiff,** <br><br> **v.** <br><br> **Professional Finance Company, Inc.,** <br><br> **Defendant.** | Case No. <br><br> **Related to: 1:22-cv-01679** <br><br> **CLASS ACTION COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff Joshua Wheat ("Plaintiff") brings this Class Action Complaint against Defendant Professional Finance Company, Inc. ("PFC"), on behalf of himself and on behalf of all others similarly situated ("Class Members"), and alleges, as to all other matters, as follows:

### PARTIES

1.     Plaintiff Joshua Wheat is a Citizen of Alabama residing in Anniston, Alabama.

2.     Defendant Professional Finance Company, Inc. is a corporation organized under the laws of Colorado, and its United States headquarters and principal place of business is located at 5754 W. 11th St., Ste 100, Greeley, Colorado 80634.

### JURISDICTION AND VENUE

3.     This Court has subject matter jurisdiction over this action under 28 U.S.C.§ 1332(d) because this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one member of the class, including Plaintiff, is a citizen of Alabama and PFC is a citizen of Colorado.

1

4.     This Court has personal jurisdiction over PFC because its principal place of business is in this District and the actions giving rise to Plaintiff's claims occurred in this District.

5.     Venue is proper under 18 U.S.C § 1391(b)(1) because PFC's principal place of business is in this District.

## NATURE OF THE CASE

6.     Plaintiff brings this class action against PFC for its failure to properly secure and safeguard personally identifiable information including, but not limited to, first and last names, addresses, accounts receivable balances and information regarding payments made to accounts, and Social Security numbers (collectively, "PII") and, for some individuals, birth dates, Social Security numbers, and personal health information ("PHI") including health insurance information, and medical treatment information (collectively "Sensitive Information").

7.     PFC's website claims "[PFC] is an accounts receivable management company located in Greeley, Colorado. Thousands of national clients rely on [PFC] to recover their receivables and manage their early out self-pay programs."[1]

8.     According to its website, PFC is one of the nation's leading debt recovery agencies, and its client list includes many healthcare providers, retailers, financial organizations, and government agencies.[2]

9.     On February 26, 2022, PFC identified a cyber incident in which an unauthorized third party accessed and disabled some of PFC's computer systems (the "Data Breach").

---

[1] https://www.pfcusa.com/about-us/ (Last accessed on July 8, 2022).
[2] https://www.hipaajournal.com/657-healthcare-providers-affected-by-ransomware-attack-on-professional-finance-company/ (Last accessed on July 8, 2022).

2

10.     PFC engaged a third-party forensic specialist and determined that 657 of its healthcare provider clients were affected. A list of all affected entities is attached as Exhibit 1.

11.     PFC reviewed the data that was obtained in the Data Breach and PFC confirmed that the data contained names, addresses, accounts receivable balances, information regarding payments made to accounts, and, for some individuals, birth dates, Social Security numbers, and personal health information including health insurance information, and medical treatment information.

12.     Despite learning of the Data Breach in February 2022, PFC did not begin notifying Plaintiff and Class Members until on or around May 5, 2022. PFC delayed in sending notice of the Data Breach even though PFC is well aware of the need to move quickly in responding to Data breach events due to the nature of its business and the sensitive information it maintains.

13.     As a result of the Data Breach, Plaintiff and likely millions of Class Members suffered ascertainable losses in the form of the loss of the benefit of their bargain, out-of-pocket expenses, and the value of their time reasonably incurred to remedy or mitigate the effects of the attack and the substantial and imminent risk of identity theft.

14.     By obtaining, collecting, using, and deriving a benefit from the Sensitive Information of Plaintiff and Class Members, PFC assumed legal and equitable duties to those individuals to protect and safeguard that information from unauthorized access and intrusion. PFC admits that the unencrypted Sensitive Information impacted during the Data Breach included names, addresses, dates of birth, Social Security numbers, diagnostic information, and health insurance information.

15.     The exposed Sensitive Information of Plaintiff and Class Members can—and likely will—be sold on the dark web.  Hackers can offer for sale the unencrypted, unredacted Sensitive

Information to criminals.  Plaintiff and Class Members now face a lifetime risk of identity theft, which is heightened here by the loss of Social Security numbers – the gold standard for identity thieves.

16.     This Sensitive Information was compromised due to PFC's negligent and/or careless acts and omissions and the failure to protect the Sensitive Information of Plaintiff and Class Members.  In addition to PFC's failure to prevent the Data Breach, after discovering the breach, PFC waited several months to report it to government agencies and affected individuals.

17.     As a result of this delayed response, Plaintiff and Class Members did not know their Sensitive Information had been compromised, and that they were, and continue to be, at significant risk of identity theft and various other forms of personal, social, and financial harm. The risk will remain for their respective lifetimes.

18.     PFC is responsible for allowing this data breach through its failure to implement and maintain reasonable network safeguards, its unreasonable data retention policies, failure to adequately train employees, and its failure to comply with industry-standard data security practices.

19.     Plaintiff and members of the proposed Class have suffered actual and imminent injuries as a direct result of the data breach. The actual and imminent injuries suffered by Plaintiff and the proposed Class as a direct result of the data breach include: (a) theft of their personal data; (b) costs associated with the detection and prevention of identity theft; (c) costs associated with time spent and the loss of productivity from taking time to address and attempt to monitor, ameliorate, mitigate and deal with the consequences of the data breach (d) the anxiety, stress, nuisance, and annoyance of dealing with all issues resulting from the data breach; (e) actual fraudulent activity on financial accounts (f) increased fraudulent robo calls and phishing email

attempts (g) the potential for future fraud and the increased risk of identity theft posed by their personal data being placed in the hands of the ill-intentioned hackers and/or criminals; (h) damages to and diminution in value of their personal data entrusted to PFC; (i) the retention of the reasonable value of the Sensitive Information entrusted to PFC; and (j) the continued risk to their personal data which remains in the possession of PFC and which is subject to further breaches so long as PFC fails to undertake appropriate and adequate measures to protect the Sensitive Information in its possession.

20.     Accordingly, Plaintiff, on behalf of himself and other members of the Class (as defined *infra*), asserts negligence, consumer protection, and unjust enrichment claims, and seeks injunctive relief, declaratory relief, monetary damages, and all other relief as authorized in equity or by law.

## **FACTUAL ALLEGATIONS**

### *Background*

21.     Plaintiff and Class Members directly or indirectly entrusted PFC with sensitive and confidential information, including their PII and PHI which includes information that is static, does not change, and can be used to commit myriad financial crimes.

22.     PFC's Privacy Policy acknowledges that PFC has a duty to protect Plaintiff's and Class Members' Sensitive Information.[3]

23.     PFC's Privacy Policy pertains to Sensitive Information provided to PFC and any Sensitive Information that PFC collects.[4]

24.     Plaintiff and Class Members relied on PFC to keep their Sensitive Information

---

[3] https://www.pfcusa.com/privacy-policy/ (Last accessed on July 6, 2022).
[4] *Id*.

confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information. Plaintiff and Class Members demand PFC safeguard their Sensitive Information.

25.     PFC had a duty to adopt reasonable measures to protect the Sensitive Information of Plaintiff and Class Members from involuntary disclosure to third parties.

26.     On information and belief, PFC maintains the Sensitive Information of consumers and customers, including but not limited to: (1) names; (2) addresses; (3) accounts receivable balances and information regarding payments made to accounts; and (4) Social Security numbers.

27.     The unencrypted PII and PHI of Plaintiff and Class Members will likely end up for sale on the dark web as that is the *modus operandi* of hackers. In addition, unencrypted PII and PHI may fall into the hands of companies that will use the detailed PII and PHI for targeted marketing without the approval of Plaintiff and Class Members. In turn, unauthorized individuals can easily access the PII and PHI of Plaintiff and Class Members.

28.      PFC did not use reasonable security procedures and practices appropriate to the nature of the sensitive, unencrypted information they were maintaining for Plaintiff and Class Members, causing the exposure of Sensitive Information.

29.     As explained by the Federal Bureau of Investigation, "[p]revention is the most effective defense against ransomware and it is critical to take precautions for protection."[5]

**PFC Acquires, Collects, and Stores the Sensitive Information of Plaintiff and Class Members**

30.     PFC acquired, collected, and stored the PII and PHI of Plaintiff and Class Members.

---

[5] *See* How to Protect Your Networks from RANSOMWARE, at 3, *available at* https://www.fbi.gov/file-repository/ransomware-prevention-and-response-for-cisos.pdf/view (Last accessed on July 9, 2022).

31.     By obtaining, collecting, and storing the PII and PHI of Plaintiff and Class Members, PFC assumed legal and equitable duties and knew or should have known that it was responsible for protecting the Sensitive Information from disclosure.

32.     Plaintiff and Class Members have taken reasonable steps to maintain the confidentiality of their PII and PHI and relied on PFC to keep their Sensitive Information confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.

***Securing Sensitive Information and Preventing Breaches***

33.     PFC could have prevented this Data Breach by properly securing and encrypting the systems containing the PII of Plaintiff and Class Members.  Alternatively, PFC could have destroyed the data, especially for individuals with whom it had not had a relationship for a period of time.

34.     PFC's negligence in safeguarding the PII and PHI of Plaintiff and Class Members is exacerbated by the repeated warnings and alerts directed to companies like PFC to protect and secure sensitive data they possess.

35.     Despite the prevalence of public announcements of data breach and data security compromises, PFC failed to take appropriate steps to protect the PII and PHI of Plaintiff and Class Members from being compromised.

36.     The Federal Trade Commission ("FTC") defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[6] The FTC describes "identifying information" as "any name or number that may be used, alone or

---

[6] 17 C.F.R. § 248.201 (2013).

7

in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."[7]

37.     The ramifications of PFC's failure to keep secure the Sensitive Information of Plaintiff and Class Members are long lasting and severe. Once Sensitive Information is stolen, particularly Social Security numbers, fraudulent use of that information and damage to victims may continue for years.

***Value of Sensitive Information***

38.     The PII of individuals remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, personal information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[8] Experian reports that a stolen credit or debit card number can sell for $5 to $110 on the dark web.[9] Criminals can also purchase access to entire company data breaches from $900 to $4,500.[10]

39.     Social Security numbers, for example, are among the worst kind of personal information to have stolen because they may be put to a variety of fraudulent uses and are difficult

---

[7] *Id.*

[8] *Your personal data is for sale on the dark web. Here's how much it costs,* Digital Trends, Oct. 16, 2019, *available at*: https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/ (Last accessed July 8, 2022).

[9] *Here's How Much Your Personal Information Is Selling for on the Dark Web*, Experian, Dec. 6, 2017, *available at*: https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/ (Last accessed July 8, 2022).

[10] *In the Dark*, VPNOverview, 2019, *available at*: https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/ (Last accessed July 8, 2022).

for an individual to change. The Social Security Administration stresses that the loss of an individual's Social Security number, as is the case here, can lead to identity theft and extensive financial fraud:

> A dishonest person who has your Social Security number can use it to get other personal information about you. Identity thieves can use your number and your good credit to apply for more credit in your name. Then, they use the credit cards and don't pay the bills, it damages your credit. You may not find out that someone is using your number until you're turned down for credit, or you begin to get calls from unknown creditors demanding payment for items you never bought. Someone illegally using your Social Security number and assuming your identity can cause a lot of problems.[11]

40.     What is more, it is no easy task to change or cancel a stolen Social Security number. An individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse. In other words, preventive action to defend against the possibility of misuse of a Social Security number is not permitted; an individual must show evidence of actual, ongoing fraud activity to obtain a new number.

41.     Even then, a new Social Security number may not be effective. According to Julie Ferguson of the Identity Theft Resource Center, "The credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."[12]

42.     Based on the foregoing, the information compromised in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer data breach because, there, victims can cancel or close credit and debit card accounts.  The information

---

[11] Social Security Administration, *Identity Theft and Your Social Security Number*, *available at*: https://www.ssa.gov/pubs/EN-05-10064.pdf (Last accessed on July 8, 2022).
[12] Bryan Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR (Feb. 9, 2015), *available at*: http://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millionsworrying-about-identity-theft (Last accessed on July 8, 2022).

compromised in this Data Breach is impossible to "close" and difficult, if not impossible, to change—Social Security number and name.

43.     This data demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "Compared to credit card information, personally identifiable information and Social Security numbers are worth more than 10x on the black market."[13]

44.     Among other forms of fraud, identity thieves may obtain driver's licenses, government benefits, medical services, and housing or even give false information to police.

45.     The fraudulent activity resulting from the Data Breach may not come to light for years.

46.     Theft of PHI is also gravely serious: "[a] thief may use your name or health insurance numbers to see a doctor, get prescription drugs, file claims with your insurance provider, or get other care. If the thief's health information is mixed with yours, your treatment, insurance and payment records, and credit report may be affected."

47.     Drug manufacturers, medical device manufacturers, pharmacies, hospitals and other healthcare service providers often purchase PII and PHI on the black market for the purpose of target marketing their products and services to the physical maladies of the data breach victims themselves. Insurance companies purchase and use wrongfully disclosed PHI to adjust their insureds' medical insurance premiums.

48.     According to account monitoring company LogDog, medical data, such as PHI,

---

[13] Time Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, IT World, (Feb. 6, 2015), *available at*: https://www.networkworld.com/article/2880366/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html (Last accessed on July 8, 2022).

sells for $50 and up on the Dark Web.[14]

49.    Moreover, there may be a time lag between when harm occurs versus when it is discovered, and also between when Sensitive Information is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[15]

50.    At all relevant times, PFC knew, or reasonably should have known, of the importance of safeguarding the PII and PHI of Plaintiff and Class Members, including Social Security numbers, and of the foreseeable consequences that would occur if PFC's data security system was breached, including, specifically, the significant costs that would be imposed on Plaintiff and Class Members as a result of a breach.

51.    Plaintiff and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. The Class is incurring and will continue to incur such damages in addition to any fraudulent use of their PII and PHI.

52.    PFC was, or should have been, fully aware of the unique type and the significant volume of data on PFC's network, amounting to potentially millions of individuals' detailed, personal information and, thus, the significant number of individuals who would be harmed by the

---

[14] Lisa Vaas, *Ransomware Attacks Paralyze, and Sometimes Crush, Hospitals*, Naked Security (Oct. 3, 2019), https://nakedsecurity.sophos.com/2019/10/03/ransomware-attacks-paralyze-and-sometimes-crush-hospitals/#content (Last accessed on July 8, 2022).
[15] *Report to Congressional Requesters*, GAO, at 29 (June 2007), *available at:* https://www.gao.gov/assets/gao-07-737.pdf (Last accessed on July 8, 2022).

exposure of the unencrypted data.

53.     To date, PFC has offered Plaintiff and Class Members only 12 months of identity and credit monitoring services through Experian. The offered service is inadequate to protect Plaintiff and Class Members from the threats they face for years to come, particularly in light of the PII at issue here. Moreover, PFC put the burden squarely on Plaintiff and Class Members to enroll in the inadequate monitoring services.

54.     The injuries to Plaintiff and Class Members were directly and proximately caused by PFC's failure to implement or maintain adequate data security measures for the Sensitive Information of Plaintiff and Class Members.

55.     As a condition of providing medical treatment and services, processing medical claims, sending bills, and providing collection services for treatment, PFC requires that its customers entrust it with Sensitive Information.

56.     By obtaining, collecting, using, and deriving a benefit from Plaintiff and Class Members' Sensitive Information, PFC assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiff's and Class Members' Sensitive Information from unauthorized disclosure.

57.     Plaintiff and the Class Members have taken reasonable steps to maintain the confidentiality of their Sensitive Information.

58.     Plaintiff and the Class Members relied on PFC to implement and follow adequate data security policies and protocols, to keep their Sensitive Information confidential and securely maintained, to use such Sensitive Information solely for business and health care purposes, and to prevent the unauthorized disclosures of the Sensitive Information.

59.

*PFC failed to properly protect Plaintiff's and Class Members' Sensitive Information*

60.     To prevent and detect unauthorized cyber-attacks, PFC could and should have implemented, as recommended by the United States Government, the following measures:

- Implement an awareness and training program. Because end users are targets, employees and individuals should be aware of the threat of ransomware and how it is delivered.

- Enable strong spam filters to prevent phishing emails from reaching the end users and authenticate inbound email using technologies like Sender Policy Framework (SPF), Domain Message Authentication Reporting and Conformance (DMARC), and DomainKeys Identified Mail (DKIM) to prevent email spoofing.

- Scan all incoming and outgoing emails to detect threats and filter executable files from reaching end users.

- Configure firewalls to block access to known malicious IP addresses.

- Patch operating systems, software, and firmware on devices. Consider using a centralized patch management system.

- Set anti-virus and anti-malware programs to conduct regular scans automatically.

- Manage the use of privileged accounts based on the principle of least privilege: no users should be assigned administrative access unless absolutely needed; and those with a need for administrator accounts should only use them when necessary.

- Configure access controls—including file, directory, and network share permissions—with least privilege in mind. If a user only needs to read specific files, the user should not have write access to those files, directories, or shares.

- Disable macro scripts from office files transmitted via email. Consider using Office Viewer software to open Microsoft Office files transmitted via email instead of full office suite applications.

- Implement Software Restriction Policies (SRP) or other controls to prevent programs from executing from common ransomware locations, such as temporary folders supporting popular Internet browsers or compression/decompression programs, including the AppData/LocalAppData folder.

- Consider disabling Remote Desktop protocol (RDP) if it is not being used.

- Use application whitelisting, which only allows systems to execute programs known and permitted by security policy.

- Execute operating system environments or specific programs in a virtualized environment

- Categorize data based on organizational value and implement physical and logical separation of networks and data for different organizational units.[16]

61.    To prevent and detect cyber-attacks, including the cyber-attack that resulted in the Data Breach, PFC could and should have implemented, as recommended by the United States Cybersecurity & Infrastructure Security Agency, the following measures:

- **Update and patch your computer**.  Ensure your applications and operating systems (OSs) have been updated with the latest patches. Vulnerable applications and OSs are the target of most ransomware attacks….

- **Use caution with links and when entering website addresses**.  Be careful when clicking directly on links in emails, even if the sender appears to be someone you know. Attempt to independently verify website addresses (e.g., contact your organization's helpdesk, search the internet for the sender organization's website or the topic mentioned in the email). Pay attention to the website addresses you click on, as well as those you enter yourself. Malicious website addresses often appear almost identical to legitimate sites, often using a slight variation in spelling or a different domain (e.g., .com instead of .net)….

- **Open email attachments with caution**. Be wary of opening email attachments, even from senders you think you know, particularly when attachments are compressed files or ZIP files.

- **Keep your personal information safe**.  Check a website's security to ensure the information you submit is encrypted before you provide it….

- **Verify email senders**.  If you are unsure whether or not an email is legitimate, try to verify the email's legitimacy by contacting the sender directly. Do not click on any links in the email. If possible, use a previous (legitimate) email to ensure the contact information you have for the sender is authentic before you contact them.

- **Inform yourself**.  Keep yourself informed about recent cybersecurity threats and up

---

[16] *Id.* at 3-4.

to date on ransomware techniques. You can find information about known phishing attacks on the Anti-Phishing Working Group website. You may also want to sign up for CISA product notifications, which will alert you when a new Alert, Analysis Report, Bulletin, Current Activity, or Tip has been published.

- **Use and maintain preventative software programs**. Install antivirus software, firewalls, and email filters—and keep them updated—to reduce malicious network traffic….[17]

62.    To prevent and detect cyber-attacks, including the cyber-attack that resulted in the

Data Breach, PFC could and should have implemented, as recommended by the Microsoft Threat

Protection Intelligence Team, the following measures:

**Secure internet-facing assets**

- Apply latest security updates
- Use threat and vulnerability management
- Perform regular audit; remove privileged credentials;

**Thoroughly investigate and remediate alerts**

- Prioritize and treat commodity malware infections as potential full compromise;

**Include IT Pros in security discussions**

- Ensure collaboration among [security operations], [security admins], and [information technology] admins to configure servers and other endpoints securely;

**Build credential hygiene**

- Use [multifactor authentication] or [network level authentication] and use strong, randomized, just-in-time local admin passwords

**Apply principle of least-privilege**

- Monitor for adversarial activities
- Hunt for brute force attempts

---

[17] *See* Security Tip (ST19-001) Protecting Against Ransomware (original release date Apr. 11, 2019), *available at* https://us-cert.cisa.gov/ncas/tips/ST19-001 (Last accessed on July 8, 2022).

- Monitor for cleanup of Event Logs
- Analyze logon events

**Harden infrastructure**

- Use Windows Defender Firewall
- Enable tamper protection
- Enable cloud-delivered protection
- Turn on attack surface reduction rules and [Antimalware Scan Interface] for Office [Visual Basic for Applications].[18]

63.     Given that PFC was storing the PII and PHI of Plaintiff and Class Members, PFC could and should have implemented all of the above measures to prevent and detect cyberattacks.

64.     The occurrence of the Data Breach indicates that PFC failed to adequately implement one or more of the above measures to prevent cyberattacks, resulting in the Data Breach and the exposure of the Sensitive Information of Plaintiff and Class Members.

65.     As the result of computer systems in need of security upgrades, inadequate procedures for handling email phishing attacks, viruses, malignant computer code, hacking attacks, PFC negligently and unlawfully failed to safeguard Plaintiff's and Class Members' Sensitive Information.

66.     PFC sent Plaintiff and Class Members a Notice of Data Breach Letter on or around July 1, 2022. The Notice of Data Breach Letter informed Plaintiff and Class Members that:

On February 26, 2022, PFC detected and stopped a sophisticated ransomware attack in which an unauthorized third party accessed and disabled some of PFC's computer systems. PFC immediately engaged third party forensic specialists to assist us with securing the network environment and investigating the extent of any unauthorized activity. Federal law enforcement was also notified. The ongoing investigation determined that an unauthorized third party accessed files containing certain individuals' personal information during this incident.   PFC notified the

---

[18] *See* Human-operated ransomware attacks: A preventable disaster (Mar 5, 2020), *available at* https://www.microsoft.com/security/blog/2020/03/05/human-operated-ransomware-attacks-a-preventable-disaster/ (Last accessed on July 8, 2022).

respective healthcare providers on or around May 5, 2022.  This incident only impacted data on PFC's systems. The list of healthcare providers can be viewed here: https://bit.ly/CoveredEntitiesPFC   PFC found no evidence that personal information has been specifically misused; however, it is possible that the following information could have been accessed by an unauthorized third party: first and last name, address, accounts receivable balance and information regarding payments made to accounts, and, in some cases, date of birth, Social Security number, and health insurance and medical treatment information.

67.     PFC admitted that Sensitive Information potentially impacted in the Data Breach contained Social Security numbers, driver's license information, and/or benefits enrollment information.

68.     Because PFC failed to properly protect safeguard Plaintiff's and Class Members' Sensitive Information, an unauthorized third party was able to access PFC's network, and access Plaintiff's and Class Members' Sensitive Information stored on PFC's system.

***Plaintiff Wheat's Experience***

69.     Plaintiff entrusted his Sensitive Information to PFC.

70.     Prior to the Data Breach, PFC retained Plaintiff's name, address, social security number, and accounts receivable balance and information regarding payment made to his account.

71.     Plaintiff provided his Sensitive Information to PFC and trusted that PFC would implement and maintain reasonable security measures to safeguard against the unauthorized disclosure of his Sensitive Information.

72.     On July 1, 2022, PFC notified Plaintiff that PFC's network had been accessed and that the following information may have been impacted: "First and last name, address, accounts receivable balance and information regarding payments made to your account, social security number."

73.     As a result of the Data Breach, Plaintiff Wheat made reasonable efforts to mitigate the impact of the Data Breach, including but not limited to: researching the Data Breach; reviewing credit reports and financial account statements for any indications of actual or attempted identity theft or fraud; and researching credit monitoring and identity theft protection services offered by PFC. Plaintiff Wheat has spent several hours dealing with the Data Breach, valuable time Plaintiff Wheat otherwise would have spent on other activities, including but not limited to work and/or recreation.

74.     As a result of the Data Breach, Plaintiff Wheat has suffered anxiety as a result of the release of his Sensitive Information, which he believed would be protected from unauthorized access and disclosure, including anxiety about unauthorized parties viewing, selling, and/or using his Sensitive Information for purposes of identity theft and fraud. Plaintiff Wheat is very concerned about identity theft and fraud, as well as the consequences of such identity theft and fraud resulting from the Data Breach.

75.     Plaintiff Wheat suffered actual injury from having his Sensitive Information compromised as a result of the Data Breach including, but not limited to (a) damage to and diminution in the value of his Sensitive Information, a form of property that PFC obtained from Plaintiff Wheat; (b) violation of his privacy rights; and (c) present, imminent and impending injury arising from the increased risk of identity theft and fraud.

76.     As a result of the Data Breach, Plaintiff Wheat anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. As a result of the Data Breach, Plaintiff Wheat is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come.

77.     Plaintiff has a continuing interest in ensuring that Plaintiff's Sensitive Information,

which, upon information and belief, remains backed up in PFC's possession, is protected, and

safeguarded from future breaches.

## CLASS ALLEGATIONS

78.     Plaintiff brings this nationwide class action on behalf of himself and on behalf of

others similarly situated pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of

Civil Procedure.

79.     Plaintiff brings this nationwide class action on behalf of himself and all others

similarly situated under Rules 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil

Procedure.

80.     The Nationwide Class that Plaintiff seek to represent is defined as follows:

**All persons PFC identified as being among those individuals impacted by the Data Breach, including all who were sent a notice of the Data Breach.**

81.     Excluded from the Class are PFC's officers and directors; any entity in which PFC

has a controlling interest; and the affiliates, legal representatives, attorneys, successors, heirs, and

assigns of PFC. Excluded also from the Class are members of the judiciary to whom this case is

assigned, their families and Members of their staff.

82.     Plaintiff reserves the right to amend or modify the Class definition and/or create

additional subclasses as this case progresses.

83.     <u>Numerosity</u>. The Members of the Class are so numerous that joinder of all of them

is impracticable. While the exact number of Class Members is unknown to Plaintiff at this time,

based on information and belief, the Class consists of at least hundreds of thousands of patients

like Plaintiff and Class Members whose Sensitive Information was compromised in Data Breach.

84.   <u>Commonality</u>. There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

a.   Whether PFC unlawfully used, maintained, lost, or disclosed Plaintiff's and Class Members' Sensitive Information;

b.   Whether PFC failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

c.   Whether PFC's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

d.   Whether PFC's data security systems before and during the Data Breach were consistent with industry standards;

e.   Whether PFC owed a duty to Class Members to safeguard their Sensitive Information;

f.   Whether PFC breached its duty to Class Members to safeguard their Sensitive Information;

g.   Whether PFC knew or should have known that its data security systems and monitoring processes were deficient;

h.   Whether PFC should have discovered the Data Breach sooner;

i.   Whether Plaintiff and Class Members suffered legally cognizable damages as a result of PFC's misconduct;

j.   Whether PFC's conduct was negligent;

k.   Whether PFC's acts, inactions, and practices complained of herein amount to acts of intrusion upon seclusion under the law;

l.   Whether PFC breached a fiduciary duty to Plaintiff and Class Members;

m.   Whether PFC violated the consumer protection statute invoked below;

n.   Whether PFC breach implied or express contracts with Plaintiff and Class Members;

o.   Whether PFC was unjustly enriched by unlawfully retaining a benefit conferred upon them by Plaintiff and Class Members;

p.   Whether PFC failed to provide notice of the Data Breach in a timely manner, and;

q.   Whether Plaintiff and Class Members are entitled to damages, civil penalties, punitive damages, treble damages, and/or injunctive relief.

85.   <u>Typicality</u>. Plaintiff's claims are typical of those of other Class Members because Plaintiff's information, like that of every other Class Member, was compromised in the Data Breach.

86.   <u>Adequacy of Representation</u>. Plaintiff will fairly and adequately represent and protect the interests of the Members of the Class. Plaintiff's Counsel are competent and experienced in litigating Class actions.

87.   <u>Predominance</u>. PFC have engaged in a common course of conduct toward Plaintiff and Class Members, in that all the Plaintiff's and Class Members' data was stored on the same computer system and unlawfully accessed in the same way. The common issues arising from PFC's conduct affecting Class Members set out above predominate over any individualized issues.

Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

88.  <u>Superiority</u>. A Class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a Class action, most Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for PFC. In contrast, the conduct of this action as a Class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class Member.

89.  PFC has acted on grounds that apply generally to the Class as a whole, so that Class certification, injunctive relief, and corresponding declaratory relief are appropriate on a Class-wide basis.

## CAUSES OF ACTION

### COUNT I
### NEGLIGENCE
### (On Behalf of Plaintiff and the Nationwide Class)

90.  Plaintiff and the Nationwide Class (the "Class" for the purposes of this "Count") repeat and re-allege each and every allegation in the Complaint as if fully set forth herein.

91.  Plaintiff and the Class entrusted their Sensitive Information to PFC and its affiliates on the premise and with the understanding that PFC would exercise reasonable care in the protection of their Sensitive Information.

92.     PFC has full knowledge of the sensitivity of the Sensitive Information and the types of harm that Plaintiff and the Class could and would suffer if the Sensitive Information were wrongfully disclosed.

93.     PFC knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using of the Sensitive Information of Plaintiff and the Class involved an unreasonable risk of harm to Plaintiff and the Class.

94.     PFC had a duty to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties. This duty includes, among other things, configuring, maintaining, and testing PFC's security protocols to ensure that the Sensitive Information of Plaintiff and the Class in PFC's possession was adequately secured and protected.

95.     PFC also had a duty to exercise appropriate clearinghouse practices to remove job applicants' Sensitive Information it was no longer required to retain pursuant to regulations.

96.     PFC had a duty to properly train employees to recognize phishing attempts and other common data security risks.

97.     PFC also had a duty to have procedures in place to detect and prevent the improper access and misuse of the Sensitive Information of Plaintiff and the Nationwide Class.

98.     PFC's duty to use reasonable security measures arose as a result of the relationship that existed between PFC and Plaintiff and the Nationwide Class. That relationship arose because Plaintiff and the Nationwide Class entrusted PFC with their confidential Sensitive Information.

99.     PFC was subject to an independent duty untethered to any contract between PFC and Plaintiff or the Class.

100.    A breach of security, unauthorized access, and resulting injury to Plaintiff and the Class was reasonably foreseeable, particularly in light of PFC's inadequate security practices.

101.    Plaintiff and the Class were the foreseeable and probable victims of any inadequate security practices and procedures. PFC knew or should have known of the inherent risks in collecting and storing the Sensitive Information of Plaintiff and the Nationwide Class, the critical importance of providing adequate security of that Sensitive Information, and the necessity for encrypting Sensitive Information.

102.    PFC's own conduct created a foreseeable risk of harm to Plaintiff and the Nationwide Class. PFC's misconduct included, but was not limited to, its failure to encrypt the data stored on its system or to implement other reasonable industry standard measures to safeguard Sensitive Information.

103.    Plaintiff and the Class had no ability to protect their Sensitive Information that was in, and remains in, PFC's possession.

104.    PFC was in a position to protect against the harm suffered by Plaintiff and the Class as a result of the Data Breach.

105.    PFC had and continues to have a duty to adequately disclose that the Sensitive Information of Plaintiff and the Class within PFC's possession might have been compromised, how it was compromised, and precisely the types of data that were compromised and when. Such notice was necessary to allow Plaintiff and the Class to take steps to prevent, mitigate, and repair any identity theft and the fraudulent use of their Sensitive Information by third parties.

106.    PFC had a duty to employ proper procedures to prevent the unauthorized dissemination of the Sensitive Information of Plaintiff and the Class.

107.    PFC, through its actions and/or omissions, unlawfully breached its duties to Plaintiff and the Class by failing to implement industry protocols and exercise reasonable care in protecting and safeguarding the Sensitive Information of Plaintiff and the Class during the time the PII was within PFC's possession or control.

108.    PFC improperly and inadequately safeguarded the Sensitive Information of Plaintiff and the Class in deviation of standard industry rules, regulations, and practices at the time of the Data Breach.

109.    PFC, through its actions and/or omissions, unlawfully breached its duty to Plaintiff and the Nationwide Class by failing to have appropriate procedures in place to detect and prevent dissemination of job applicants' Sensitive Information.

110.    PFC breached its duty to exercise appropriate clearinghouse practices by failing to remove job applicants' Sensitive Information it was no longer required to retain pursuant to regulations.

111.    PFC breached its duty to adequately train employees to recognize and avoid phishing attempts and other basic cybersecurity risks.

112.    PFC, through its actions and/or omissions, unlawfully breached its duty to adequately and timely disclose to Plaintiff and the Class the existence and scope of the Data Breach.

113.    PFC breached its duty to safeguard Plaintiff's and Class Members' Sensitive Information by failing to retain such information in an encrypted form.

114.    But for PFC's wrongful and negligent breach of duties owed to Plaintiff and the Nationwide Class, the Sensitive Information of Plaintiff and the Class would not have been compromised.

115.    There is a close causal connection between PFC's failure to implement security measures to protect the Sensitive Information of Plaintiff and the Nationwide Class and the harm, or risk of imminent harm, suffered by Plaintiff and the Class. The PII of Plaintiff and the Class was lost and accessed as the proximate result of PFC's failure to exercise reasonable care in safeguarding such Sensitive Information by adopting, implementing, and maintaining appropriate security measures.

116.    As a direct and proximate result of PFC's negligence, Plaintiff and the Class have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity of how their Sensitive Information is used; (iii) the compromise, publication, and/or theft of their Sensitive Information; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their Sensitive Information; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the present and continuing consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to their Sensitive Information, which remain in PFC's possession and is subject to further unauthorized disclosures so long as PFC fails to undertake appropriate and adequate measures to protect the Sensitive Information of Plaintiff and the Class; and (viii) present and continuing costs in terms of time, effort, and money that has been and will be expended to prevent, detect, contest, and repair the impact of the Sensitive Information compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and the Nationwide Class.

117.    As a direct and proximate result of PFC's negligence, Plaintiff and the Nationwide Class have suffered and will continue to suffer other forms of injury and/or harm, including, but

26

not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

118.    Additionally, as a direct and proximate result of PFC's negligence, Plaintiff and the Nationwide Class have suffered and will suffer the continued risks of exposure of their Sensitive Information, which remains in PFC's possession and is subject to further unauthorized disclosures so long as PFC fails to undertake appropriate and adequate measures to protect the Sensitive Information in its continued possession.

119.    As a direct and proximate result of PFC's negligence, Plaintiff and the Class are entitled to recover actual, consequential, and nominal damages.

**COUNT II**
**Violation of Colorado Consumer Protection Act,**
**Colo. Rev. Stat. § 6-1-101, *et seq.***
**(On behalf of Plaintiff and the Nationwide Class)**

120.    Plaintiff and the Nationwide Class (the "Class" for the purposes of this "Count") repeat and re-allege each and every allegation in the Complaint as if fully set forth herein.

121.    The Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-105(1)(l), *et seq.*, prohibits deceptive acts or practices in the conduct of any business, trade, or commerce, or in the furnishing of any service.

122.    PFC is a "person" under § 6-1-102(6) of the Colorado Consumer Protection Act ("Colorado CPA"), Colo. Rev. Stat. § 6-1-101, *et seq.*

123.    Plaintiff and the Nationwide Class provided and/or entrusted sensitive and confidential PII and/or PHI to PFC, which PFC collected, stored, and maintained at its Colorado headquarters.

124.    PFC is engaged in, and its acts and omissions affect, trade and commerce. PFC's

relevant acts, practices and omissions complained of in this action were done in the course of PFC's business of marketing, offering for sale, and selling goods and services throughout the United States.

125.   In the conduct of its business, trade, and commerce, PFC engaged in the conduct alleged in this Complaint in transactions intended to result, and which did result, in the provision or sale of services to consumers. Plaintiff and other members of the Nationwide Class furnished or purchased these services. Plaintiff and the Nationwide Class are actual or potential consumers as defined by Colo. Rev. Stat § 6-1-113(1), *et seq.*

126.   In the conduct of its business, trade, and commerce, PFC collected and stored highly personal and Sensitive Information, including Sensitive Information belonging to Plaintiff and the Nationwide Class.

127.   PFC knew or should have known that its computer systems and data security practices were inadequate to safeguard the Sensitive Information of Plaintiff and the Nationwide Class and that the risk of a data breach was highly likely and/or that the risk of the data breach being more extensive than originally disclosed was highly likely.

128.   PFC should have disclosed this information regarding its computer systems and data security practices because PFC was in a superior position to know the true facts related to their security practices, and Plaintiff and the Nationwide Class could not reasonably be expected to learn or discover the true facts.

129.   As alleged herein this Complaint, PFC engaged in deceptive, unfair, and unlawful trade acts or practices in the conduct of trade or commerce and the furnishing of customer relation services to consumers in violation of the Colorado Consumer Protection Act, including but not limited to the following:

a.   failing to adequately secure consumer's names and Social Security numbers;

b.   failing to maintain adequate computer systems and data security practices to safeguard consumer's personal and financial information;

c.   failing to disclose the material information, known at the time of the transaction – collection and retention of consumer Sensitive Information to furnish customer relation services – that its computer systems would not adequately protect and safeguard consumer Sensitive Information;

d.   inducing consumers to use PFC's services by failing to disclose, and misrepresenting the material fact that PFC's computer systems and data security practices were inadequate to safeguard patients' sensitive personal information from theft.

130.   By engaging in the conduct delineated above, PFC has violated the Colorado Consumer Protection Act by, among other things:

a.   omitting material facts regarding the goods and services sold;

b.   omitting material facts regarding the security of the transactions between PFC and consumers;

c.   omitting material facts regarding the security of the transactions between PFC and consumers who furnished or entrusted their Personal Information;

d.   misrepresenting material facts in the furnishing or sale of products, goods or services to consumers;

e.   engaging in conduct that is likely to mislead consumers acting reasonably under the circumstances;

f.   engaging in conduct which creates a likelihood of confusion or of misunderstanding;

g.  engaging in conduct with the intent to induce consumers to use PFC's service;

h.  unfair practices that caused or were likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers; and/or

i.  other unfair, deceptive, unconscionable, fraudulent and/or unlawful acts or practices to be shown at trial.

131.  PFC systemically engaged in these deceptive, misleading, and unlawful acts and practices, to the detriment of Plaintiff and the Nationwide Class.

132.  PFC's actions in engaging in the conduct delineated above were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of Plaintiff and Nationwide Class.

133.  As a direct result of PFC's violation of the Colorado Consumer Protection Act, Plaintiff and the Nationwide Class have suffered actual damages, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity how their Sensitive Information is used; (iii) the compromise, publication, and/or theft of their Sensitive Information; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their Sensitive Information; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the present and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to their Sensitive Information, which remain in PFC's possession and is subject to further unauthorized disclosures so long as PFC fails to undertake appropriate and adequate measures to protect that Sensitive Information; and (viii) present and future costs in terms of time, effort, and money that has been and will be expended to prevent,

detect, contest, and repair the impact of the Sensitive Information compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and the Nationwide Class.

134.    As a result of PFC's violation of the Colorado Consumer Protection Action, Plaintiff and the Nationwide Class are entitled to, and seek, injunctive relief, including, but not limited to:

a.    Ordering that PFC engage third-party security auditors/penetration testers as well as experienced and qualified internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on PFC systems on a periodic basis, and ordering PFC to promptly correct any problems or issues detected by such third-party security auditors;

b.    Ordering that PFC engage third-party security auditors and experienced and qualified internal security personnel to run automated security monitoring;

c.    Ordering that PFC audit, test, and train its security personnel regarding new or modified procedures;

d.    Ordering that PFC's segment data by, among other things, creating firewalls and access controls so that if one area of PFC is compromised, hackers cannot gain access to other portions of PFC's systems;

e.    Ordering that PFC purge, delete, and destroy in a reasonably secure manner customer data not necessary for its provision of services;

f.    Ordering that PFC conduct regular database scanning and securing checks;

g.    Ordering that PFC routinely and continually conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; and,

h.  Ordering PFC to meaningfully educate its employees and customers about the threats they face as a result of the loss of their financial and personal information to third parties, as well as the steps customers must take to protect themselves.

135.  As a direct and proximate result of the unconscionable, unfair, and deceptive acts or practices of PFC alleged herein, Plaintiff and putative class members seek relief under Colo. Rev. Stat. § 6-1-113, including, but not limited to, the greater of actual damages, statutory damages, or treble damages for bad faith conduct, injunctive relief, attorneys' fees and costs, as allowable by law.

## COUNT III
### Unjust Enrichment
### (On behalf of Plaintiff and the Nationwide Class)

136.  Plaintiff and the Nationwide Class (the "Class" for the purposes of this "Count") repeat and re-allege each and every allegation in the Complaint as if fully set forth herein.

137.  This claim is brought in the alternative to Plaintiff's claim for breach of implied contract.

138.  PFC benefited from receiving Plaintiff's and Class Members' Sensitive Information by its ability to retain and use that information for its own benefit. PFC understood this benefit.

139.  PFC also understood and appreciated that Plaintiff's and Class Members' Sensitive Information was private and confidential, and its value depended upon PFC maintaining the privacy and confidentiality of that information.

140.  Plaintiff and Class Members conferred a monetary benefit upon PFC and in connection thereto, by providing their Sensitive Information to PFC with the understanding that PFC would pay for the administrative costs of reasonable data privacy and security practices and

procedures. Specifically, they were required to provide PFC with their Sensitive Information. In exchange, Plaintiff and Class Members should have received adequate protection and data security for such Sensitive Information held by PFC.

141.    PFC knew Plaintiff and Class Members conferred a benefit which PFC accepted. PFC profited from these transactions and used the Sensitive Information of Plaintiff and Class Members for business purposes.

142.    PFC failed to provide reasonable security, safeguards, and protections to the Sensitive Information of Plaintiff and Class Members.

143.    Under the principles of equity and good conscience, PFC should not be permitted to retain money belonging to Plaintiff and Class members, because PFC failed to implement appropriate data management and security measures mandated by industry standard.

144.    PFC wrongfully accepted and retained these benefits to the detriment of Plaintiff and Class Members.

145.    PFC's enrichment at the expense of Plaintiff and Class Members is and was unjust.

146.    As a result of PFC's wrongful conduct, as alleged above, Plaintiff and Class Members are entitled to restitution and disgorgement of all profits, benefits, and other compensation obtained by PFC, plus attorneys' fees, costs, and interest thereon.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

    a)  For an Order certifying this action as a Class action and appointing Plaintiff as Class Representative and his counsel as Class Counsel;

    b)  For equitable relief enjoining PFC from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff's and

Class Members' Sensitive Information, and from refusing to issue prompt, complete and accurate disclosures to Plaintiff and Class Members;

c)  For equitable relief compelling PFC to utilize appropriate methods and policies with respect to consumer data collection, storage, and safety, and to disclose with specificity the type of Sensitive Information compromised during the Data Breach;

d)  For equitable relief requiring restitution and disgorgement of the revenues wrongfully retained as a result of PFC's wrongful conduct;

e)  Ordering PFC to pay for not less than three years of credit monitoring services for Plaintiff and the Class;

f)  For an award of actual damages, compensatory damages, statutory damages, and statutory penalties, in an amount to be determined, as allowable by law;

g)  For an award of punitive damages, as allowable by law;

h)  For an award of attorneys' fees and costs, and any other expense, including expert witness fees;

i)  Pre- and post-judgment interest on any amounts awarded; and

j)  Such other and further relief as this court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all claims so triable.


Date: July 11, 2022                             Respectfully Submitted,


                                                */s/ Joseph M. Lyon*
                                                Joseph M. Lyon
                                                **THE LYON FIRM**
                                                2754 Erie Avenue
                                                Cincinnati, OH 45208
                                                Phone: (513) 381-2333

                                                34

Fax: (513) 721-1178
*jlyon@thelyonfirm.com*

Terence R, Coates (pro hac vice forthcoming)
Dylan J. Gould (pro hac vice forthcoming)
MARKOVITS, STOCK & DEMARCO, LLC
119 E. Court Street, Suite 530
Cincinnati, OH 45202
Telephone: 513.651.3700
Facsimile: 513.665.0219
*tcoates@msdlegal.com*
*dgould@msdlegal.com*

*Counsel for Plaintiff and Putative Class*